**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:23-cv-21894-FAM**

WORLD MEDIA ALLIANCE LABEL INC.,

     *Plaintiff*,

v.

BELIEVE SAS, aka BELIEVE Co., aka BELIEVE,

aka BELIEVE DIGITAL *et al,*

     *Defendants*.

_____/

## DEFENDANT BELIEVE SAS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, STAY PROCEEDING

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and the inherent powers of this Court, Defendant Believe SAS aka Believe Co. aka Believe aka Believe Digital ("Believe") moves to dismiss WMA's Complaint, or in the alternative, to stay all proceedings in this matter pending the resolution of a related matter in a foreign court. In support thereof, Believe states:

## INTRODUCTION

This is an action based on purported copyright infringement and tortious interference with business relationships related to musical works published in Russia dating back to 1989. (*See* Compl. D.E. 1). WMA's claims are fatally flawed and can be dismissed on multiple grounds. First, WMA is unable to establish personal jurisdiction over Believe. Second, this Court should dismiss this action under the international abstention doctrine because of the ongoing dispute in Russia regarding the same issues. Third, WMA's claims suffer from fatal defects for which amendment is futile. To that end, some of the works are unregistered and cannot form the

1

basis for this lawsuit; WMA is not entitled to statutory damages or attorney's fees because the works are either not registered or were registered after the alleged infringement and more than three months after publication; and WMA's separate count for attorney's fees is procedurally improper. Finally, WMA's tortious interference with business relationships claim is preempted by the Copyright Act. For any or all these reasons, WMA's complaint should be dismissed as a matter of law.

## **BACKGROUND**

On May 22, 2023, Plaintiff World Media Alliance Label Inc. ("WMA") filed the instant action against Believe for copyright infringement, including separate counts for injunction, statutory damages and attorney's fees, and tortious interference of business relationships. Believe is a global music company founded in France with its principal place of business in France. None of the Believe entities named herein are in or have a connection with Florida. Importantly, WMA fails to plead any jurisdictional allegations as to Believe, and instead, WMA itself alleges that Believe is a foreign company with few ties to the U.S. (Compl. ¶¶ 31–32).

The Complaint is based on YouTube[1] videos that included audio from the following songs created and performed by Russian band Tender May: (1) Gray Night; (2) White Roses; (3) Pink Evening; (4) Melting Snow; (5) Cold Winter Evening; (6) Stupid Snowflakes; (7) Autumn is Slowly Leaving; (8) Summer; and (9) I Am Only Frank With the Moon ("Subject Songs"). (*See* Compl. ¶ 26).[2]

---

[1] YouTube appears to have removed the videos and was dismissed from this lawsuit.

[2] WMA lists a total of 44 YouTube links, although many are duplicate. (Compl. ¶¶ 25-26). Accordingly, only nine songs performed by Tender May are at issue. Five of the songs are registered with the Copyright Office, while four others, discussed in Section III of this Motion, are not registered. (*See* Compl. Exh. 1.)

Tender May is a popular Russian band that formed in 1988 and was comprised of its founder and songwriter, Sergey Kusnetsov (the "Founder"), and lead singer Yuriy Shatunov (the "Singer"). (*See* Compl. ¶ 10; Declaration of Vitaly Kretc (filed contemporaneously herewith ("Kretc Decl.")) ¶ 8).[3] As the band continued to create its own music, including the Subject Songs, it began to work with producer, Andrei Razin (the "Producer"). Tender May, including its Founder and Lead Singer, never transferred rights to any of its performances to the Producer. (*See generally* Kretc Decl.). Nevertheless, in 2005, the Producer unilaterally asserted an ownership claim to Tender May's creations in a Russian proceeding and used a fabricated contract as the basis for his claim. (*See* Kretc Decl. ¶¶ 9–12). In 2022, the Russian courts reviewed the 2005 claim and decided that the Producer in fact had no ownership rights in any of Tender May's works, thereby invalidating the Producer's 2005 claim. (*Id.* ¶ 15). That 2022 decision also provided an opportunity for interested parties to assert claims as to the ownership rights, and after the Singer passed away, the Singer's widow and representatives initiated the process of securing their rights in Russia. (*See* Kretc Decl. ¶ 16).

WMA now claims that the Producer "is affiliated with WMA under contracts" and that pursuant to these contracts WMA "holds the copyright to Tender May's audio and video recordings." (Compl. ¶ 16). However, the Producer had no ownership rights to any of Tender May's work, as made clear by the 2022 decision in Russian courts entered before the inception

---

[3] When analyzing jurisdiction and international abstention, courts have looked at evidence proffered as exhibits or declarations in its analysis. *See St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, No. 19-22278-CIV, 2020 WL 956301, at *3 (S.D. Fla. Feb. 27, 2020) (citing declarations discussing international litigation and settlement agreements); *Rivera de Chavon Dev. Grp. SRL v. Diaz*, No. 11-20662-CV, 2011 WL 5825770, at *4 (S.D. Fla. Nov. 17, 2011) (citing to documents from courts in the Dominican Republic); *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1304 (11th Cir. 2008).

of the instant matter or WMA's purported copyright registrations. (*See* Kretc Decl. ¶ 15). Ownership rights to the Subject Songs are still being litigated in Russian courts and are in direct conflict with WMA's claims of ownership in the United States (the "Russian Litigation") (*See* Kretc Decl. Exhibit C).[4]

## ARGUMENT

WMA has not asserted any viable claims against Believe. The Complaint fails to include any jurisdictional allegations or facts about Believe that would support jurisdiction in Florida. Rather, WMA directly *contradicts* jurisdiction by alleging that it cannot prove that Believe has offices in the U.S., let alone Florida, and cannot assert that Believe committed any tortious act in Florida. (*See* Compl. ¶¶ 2, 5, 31, 32). The Complaint also blatantly excludes nearly two decades of ongoing litigation in Russian courts that would invalidate WMA's rights entirely. WMA further fails to state claims because some of the Subject Songs are not registered, and others are not eligible for statutory damages and attorney's fees because they were not timely registered. In any event, the separate claim for attorney's fees is procedurally improper. Finally, WMA's tortious interference with business relationships claim is preempted by the Copyright Act. Accordingly, dismissal is proper.

### I.    The Complaint Fails to Establish Personal Jurisdiction.

A court must dismiss an action against a defendant over which it has no personal jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F. 3d 1209, 1214 n.6 (11th Cir. 1999); *see also Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (2010). The burden is on the plaintiff to establish a *prima facie* case of personal jurisdiction over a non-resident defendant and

---

[4] The Exhibits attached to the Kretc Declaration are in Russian and translated to English. The certificate of translation appears at Exhibit D thereto.

present evidence sufficient to withstand a motion for directed verdict. *Madara v. Hall*, 916 F. 2d 1510, 1514 (11th Cir. 1990). The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by any evidence presented by the defendant. *Id.* The reach of the Florida long-arm statute is a question of Florida law and federal courts are required to construe it as would the Florida Supreme Court. *Id.*

Importantly, a motion to dismiss under Rule 12(b)(2) should be granted when it is clear, as here, from the face of the Complaint that there is no basis for the exercise of personal jurisdiction over the defendants. *Franklin v. Anderson Media*, No. 8:10-CV-2935-T-33MAP, 2011 WL 3875519, at *3 (M.D. Fla. Aug. 31, 2011) (citing *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990)). Here, the Complaint simply alleges that "[j]urisdiction is proper" while expressly stating that Believe "has no registration in Florida," and has no ties to this jurisdiction, thereby failing the pleading requirement at the outset. (*See* Compl. ¶ 5).[5]

Additionally, WMA fails to meet its burden of alleging the basis for jurisdiction under the long-arm statute. The long-arm statute "must be strictly construed; therefore, any doubts about the applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352 n.2 (S.D. Fla. 2007). WMA has not met its burden of establishing a *prima facie* case of personal jurisdiction over Believe under the long-arm statute, and in fact alleges there *is no jurisdiction,* and therefore the Complaint should be dismissed on this basis alone. As further set forth below, exercising jurisdiction over Believe would also not comport with due process.

---

[5] Each defendant's contact with the forum must be scrutinized individually. *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321 (M.D. Fla. 2011) (rejecting attempt to lump all defendants together to establish jurisdiction).

### A.   There is no jurisdiction under Florida's Long-Arm Statute

There are two ways a defendant can be subjected to Florida's long-arm statute: through general or specific personal jurisdiction. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015); *see also* Fla. Stat. § 48.193(1)(a), (2). General personal jurisdiction stems from "a defendant's substantial activity in Florida without regard to where the cause of action arose." *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1352 (11th Cir. 2013). Specific personal jurisdiction only authorizes jurisdiction "over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Id.* A plaintiff must meet two burdens to establish long-arm jurisdiction. First, "[a] plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* at 1350 (internal quotation marks omitted). Then, "[w]hen a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (internal quotation marks omitted).

### 1.   Believe is Not Subject to General Personal Jurisdiction in Florida

To establish that Believe is subject to general jurisdiction, WMA must allege that Believe has substantial and not isolated activity in Florida. *See* § 48.193(2), Fla. Stat. Florida courts have defined the term "substantial and not isolated activity" as used in Section 48.193(2) to mean "continuous and systematic general business contact" with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)). Generally, the contacts required to establish general jurisdiction are rigorous and "must be especially pervasive and substantial" to satisfy Section 48.193. *See In re*

6

*Farmland Indus., Inc.*, No. 3:05-cv-587, 2007 WL 7694308, at *3 (M.D. Fla. Mar. 30, 2007).

As an initial matter, WMA does not even identify which section of the long-arm statute allegedly applies to Believe, a failing that itself justifies dismissal of the claim against this international company. *Franklin*, 2011 WL 3875519, at *4 (dismissing complaint because plaintiffs did not allege that defendants were residents of Florida and failed to identify any section of the long-arm statute). WMA also does not allege any facts supporting jurisdiction over Believe. The Complaint instead alleges that jurisdiction "is proper" while also alleging that Believe is based in France and has no connections with the U.S. (Compl. ¶¶ 2, 5, 31, 32) (ex. "French type of business entity registered in France" with "no operative office . . . located in the U.S."). WMA does not allege how or why Florida is the appropriate jurisdiction.

For purposes of this analysis, the Court looks whether jurisdiction is proper as to the entities named in the lawsuit. *See Knepfle v. J-Tech Corp*., 48 F.4th 1282, 1292 (11th Cir. 2022). Believe is not located in Florida, nor does it own property or regularly conduct business in Florida. (Compl. ¶¶ 31–32; *see* Kretc Decl. at ¶ 5). In short, Believe has virtually no contact with Florida, let alone the "substantial" contacts required for this Court to exercise general jurisdiction over it. And, because the Complaint on its face contradicts jurisdiction, this Court must decline to exercise general jurisdiction over it under Section 48.193(2).

### 2. Believe is Not Subject to Specific Personal Jurisdiction in Florida

A person submits themselves to jurisdiction in Florida by "[c]ommitting a tortious act within this state." § 48.193(1)(a)(2), Fla. Stat. Thus, consistent with Florida's long-arm statute, specific personal jurisdiction arises from a defendant's contacts with the forum state, "only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352 (citation omitted); *see also Turi v. Stacey*, No. 5:13-cv-248, 2015 WL 403228 at *9 (M.D. Fla. Nov. 25,

2014), *aff'd* 627 Fed. Appx. 904 (11th Cir. 2015) (specific jurisdiction is based on a party's

activities in the forum that are related to the cause of action alleged in the complaint). Here,

WMA brings various causes of action against Believe for "posting audio and video recordings on

the Internet." (*See* Compl. at 2). This Court must examine whether WMA pled sufficient facts to

make out a *prima facie* case of a tortious act, such as copyright infringement, within Florida. *See*

*Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 11202324, at *3 (S.D. Fla. Apr. 3, 2015). To do

so, WMA must establish that Believe's purported infringement over the Internet was (1)

accessible in Florida; and (2) actually accessed by persons in Florida. *Id.* at *4 (citing *Internet*

*Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214-15 (Fla. 2010)).[6]

WMA's Complaint contains no allegations that the Subject Songs are accessible and

actually accessed in Florida. Rather, WMA vaguely alleges that Believe "listed using YouTube"

certain videos but also that YouTube controls the publications (Compl. ¶¶ 25, 30). Those

allegations and that activity alone are grossly insufficient for personal jurisdiction. *See Jackson-*

*Bear Group, Inc. v. Amirjazil*, No. 2:10-CV-332-FTM-29, 2011 WL 1232985, at *6 (M.D. Fla.

Mar. 30, 2011) (dismissed for lack of jurisdiction because alleging that a website was accessible

in Florida was insufficient and due process was not met); *compare Smith v. Trans-Siberian*

*Orchestra*, 728 F. Supp. 2d 1315, 1322 (M.D. Fla. 2010) (allegedly infringing website was

accessible and accessed in Florida). Moreover, WMA clearly alleges that Believe is a French

company that has no registration in Florida or offices here. (Compl. ¶ 5). *See Knepfle v. J-Tech*

*Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022) (finding no specific personal jurisdiction over

_____

[6] The holding of *Internet Solutions* has been applied to copyright claims. *See Gainesville Coins,*
*LLC v. VCG Ventures, Inc.*, No. 8:13-CV-1402-T-30MAP, 2013 WL 4596968, at *3 (M.D. Fla.
Aug. 28, 2013).

Korean corporation). None of the facts suggest, let alone establish, that any of Believe's conduct was directed at or occurred in Florida. Any amendment would be futile and the Complaint should be dismissed.

### B. Due Process Prohibits Exercising Personal Jurisdiction Over Believe

Even if the long arm is met (which it is not), "the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). For general jurisdiction, the due process requirements coincide with the reach of Florida's long-arm statute. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (the "reach of [the general jurisdiction] provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment"). By extension, because of Believe's lack of meaningful contacts with Florida under the long-arm test, the exercise of general jurisdiction over Believe would also not comport with due process.

For specific jurisdiction, however, the Due Process Clause imposes additional hurdles: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Carey v. Kirk,* Case No. 21-20408, 2022 WL 4594124 (S.D. Fla. Aug. 4, 2022) (Martinez, J.); *Waite*, 901 F.3d at 1313 (citations omitted). WMA has the burden of establishing the first two prongs in this analysis, and if it does, the burden shifts to Believe to establish the third prong. *Louis Vuitton*, 736 F.3d at 1355.

WMA is unable to establish the first two prongs of the Due Process analysis. First, WMA does not assert any facts that show that its claims "arise out of or relate to at least one of the

defendant's contacts with the forum." *Id.* (citing *Fraser*, 594 F.3d at 850); *Walden v. Fiore,* 571 U.S. 277, 284-85 (2014) ("[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State."). Further, "the phrase 'relate to' incorporates real limits" and isolated transactions do not support specific jurisdiction. *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021) (rejecting causation-only analysis in favor of a close relationship test).

As discussed above, WMA has not alleged and cannot establish *any* activity by Believe directed to Florida, much less that such activity relates to the purported infringement. WMA's allegations in fact contradict jurisdiction and make clear that it does not exist. Because WMA has not pointed to any *forum-related conduct* on behalf of Believe or established any relationship between the international company, the forum, and the litigation, WMA cannot meet its burden under this first prong of the due process requirement. Because WMA is unable to establish the first prong, the Court can decline to assess the other prongs required for personal jurisdiction. *See Waite*, 901 F.3d at 1313 n.2.

Second, WMA fails to establish that Believe purposefully availed itself of Florida law. Courts determine purposeful availment through the minimum contacts test. *See Miller*, 383 F. Supp. at 1365. Under the traditional minimum contacts test for purposeful availment, courts assess the nonresident defendant's contacts with the forum state and ask whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citation omitted). Jurisdiction also fails under this analysis as made clear by WMA's own allegations. (Compl. ¶¶ 2, 5, 31, 32).

10

The final due process consideration is whether exercise of personal jurisdiction over the defendant would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Because WMA cannot satisfy the first two prongs of the due process analysis, this Court need not consider this factor.

Nevertheless, Believe could not have anticipated being sued in Florida. WMA cannot plausibly show that Believe targeted or directed or aimed Russian music videos to a Florida audience or that the videos were accessed in Florida at all. For that same reason, and considering the lack of any meaningful connection to Florida, forcing Believe to litigate in Florida would be unfair and offend notions of fair play and substantial justice. *See Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc*., 896 F. Supp. 1190, 1196–97 (M.D. Fla. 1995) (stating that due to the "utter poverty of contacts" to Florida, it is not "'one of those rare cases' in which notions of fair play and substantial justice may, in and of themselves, establish personal jurisdiction over a nonresident defendant.").

In sum, pursuant to both Florida's long-arm statute and due process considerations, WMA's claim against Believe should be dismissed for lack of personal jurisdiction.

## II.     This Court Should Dismiss, or in the Alternative Stay, WMA's Claims Pursuant to International Abstention Doctrine

Should the Court find that Believe is subject to personal jurisdiction it should still dismiss this case pursuant to the international abstention doctrine.[7] The doctrine allows a federal court to refrain from resolving issues when those issues are the subject of ongoing litigation in another

---

[7] Although Believe contends dismissal is proper on jurisdiction or abstention grounds, in the alternative the Court has broad discretion and inherent power to grant a motion to stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)( "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")

country through a dismissal or by staying litigation. *See Rivera de Chavon Dev. Grp. SRL v. Diaz,* No. 11-20662-CV, 2011 WL 5825770, at *4 (S.D. Fla. Nov. 17, 2011) (dismissing case in U.S. based on international abstention grounds while parallel cases were ongoing in Dominican Republic); *Turner Entm't Co. v. Degeto Film*, 25 F.3d 1512, 1518 (11th Cir. 1994) (staying matter while parallel case was litigated in Germany). The Eleventh Circuit has identified three factors in determining whether a Court should exercise its discretion and abstain from a case pending the conclusion of parallel international litigation: (1) international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources.[8] *Turner*, 25 F.3d at 1518.

The Eleventh Circuit in *Posner* recognized that the *Turner* factors apply even where there has been no judgment in the foreign suit. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1223–24. The critical question is whether the foreign proceeding is "likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009); *accord In re Braga*, 789 F. Supp. 2d 1294, 1310 (S.D. Fla. 2011).

All of the factors favor abstention. This case and the ongoing litigation in Russia are parallel because they involve the same rights, parties and works at issue. Importantly, the Russian Litigation—which has spanned nearly two decades—is intertwined with the present case because in 2022 it was made clear that Producer, and in turn WMA, does not have rights to the

---

[8] Whether this Court elects to dismiss or stay the matter, the analysis is the same when considering the factors under the abstention doctrine. *St. Martinus Univ., NV* 2020 WL 956301, (S.D. Fla. Feb. 27, 2020); *see Velarde v. HSBC Priv. Bank Int'l*, No. 13-22031-CIV, 2013 WL 5534305, at *11 (S.D. Fla. Oct. 7, 2013) ("[T]he reason for the district court's stay was at least a good one, if not an excellent one" where the decision in the other proceeding was "likely to have a substantial or controlling effect on the claims and issues in the stayed case . . . .") (citation omitted).

12

Subject Songs. (Kretc Decl. ¶ 15). The active Russian Litigation was brought to finally clarify

the ownership rights to the Subject Songs to which WMA now claims ownership (*Id.* ¶¶ 16–17).

Therefore, abstention is appropriate.

### A. *International Comity Favors Dismissing this Case*

International comity "is the recognition which one nation allows within its territory to the

legislative, executive, or judicial acts of another nation, having due regard both to international

duty and convenience, and to the rights of its own citizens, or of other persons who are under the

protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Extending comity promotes

justice of individuals and creates "a friendly intercourse between the sovereignties to which they

belong" such that "courts of justice have continually acted upon it as part of the voluntary law of

nations." *Id.* at 165 (internal citation omitted). Comity is discretionary; it is not a rule of law but

is instead one of practice. *Id.* at 163–64. Failure to defer to foreign proceedings "would have

serious implications" as the "prospect of 'dueling courts,' conflicting judgments, and attempts to

enforce conflicting judgments raise major concerns of international comity." *Turner*, 25 F.3d at

1521.  The key consideration is avoiding duplication of efforts and the risk of contradictory

decisions.

The Russian Litigation focuses on the ownership rights covering the Subject Songs (and

other works), a determination that stems from inception of the Russian Litigation in 2005. The

most recent filing reflects the Singer's estate requesting the Russian court to finally determine its

ownership rights. (*See* Kretc Decl. at ¶ 16, Exhibit C). The ongoing Russian Litigation will

consider earlier Russian decisions invalidating the Producer's ex parte claim of rights to the

Subject Songs; the same rights that WMA alleges flow to it from the Producer (Compl. ¶ 16).

Failure to dismiss or stay the current matter in deference to the Russian Litigation would have

13

serious implications; it would expose an international company to damages for work that is not rightfully owned by WMA. Accordingly, comity between the instant matter and the Russian Litigation exists and abstention is proper.

### B.  *Fairness to Litigants Favors Dismissing or Staying this Case*

The second factor similarly favors abstention. "Three considerations are relevant to the second factor—*i.e.*, fairness to litigants—in the international abstention analysis: '(1) the order in which the suits were filed; (2) the more convenient forum; and (3) the possibility of prejudice to parties resulting from abstention." *Belize Telecom, Ltd.*, 528 F.3d at 1308 (quoting *Turner*, 25 F.3d at 1521–22).

As stated above, the Russian Litigation began nearly two decades ago in 2005 when the Producer unilaterally attempted to assert rights to the Subject Songs. (Kretc Decl. ¶ 9). In 2022 when the Russian courts overturned the 2005 decision, the Producer's ownership rights were invalidated. The Singer's estate has continued that dispute in 2023 by asserting its right to resolve the ownership claims regarding the same subject matter. (*Id.* ¶ 16). The Russian matters are inextricably intertwined and make clear that WMA has no rights that allegedly stem from the Producer.

Further, the Russian court is the more convenient forum because the agreements related to the Subject Songs are governed by Russian law and involve Russian parties. In contrast, WMA is not privy to any of the contracts that would ultimately govern the ownership rights of the Subject Songs. Moreover, WMA would not be prejudiced from an abstention. On the other hand, Believe would be prejudiced should the court allow this case to proceed because doing so exposes Believe to litigation and damage based on unresolved and potentially fraudulent ownership rights. Dismissing the current matter until the Russian courts clarify the ownership

rights is necessary for WMA's claim to be viable. Therefore, abstention is fair to all litigants.

### C. *Efficient Use of Judicial Resources Favors Staying this Case*

Finally, principles of judicial economy further favor dismissal based on abstention. Criteria relevant to efficiency includes (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) whether the actions have parties and issues in common; and (4) whether the alternative forum is likely to render a prompt disposition. *Turner*, 25 F.3d at 1522 (internal citations omitted).

As stated above, Russia is a far more convenient forum for the parties and underlying issues relevant to this case. The current matter is a piecemeal and derivative litigation of the Russian disputes and is pending in a court that has no jurisdiction over Believe. The longstanding history of the parties and ownership rights over the Subject Songs in Russia renders those courts more aptly suited to promptly determine the ownership rights as to the Subject Songs. In addition, the Russian courts move quickly in comparison to the U.S., and typically take several months to resolve the issues before it. (Kretc Decl. ¶ 17). In addition, the decision of the Russian courts related to the Singer's claim of ownership rights has a controlling effect on the claims and issues in the instant case. All factors of international comity, fairness, and efficiency favor abstention and a dismissal is proper.

### III. <u>Counts II, III, and V Should Be Dismissed As a Matter of Law</u>

WMA's counts for statutory damages, attorney's fees, and tortious interference with beneficial business relationships can also be dismissed for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), the Court must accept plaintiff's well-pleaded allegations as true and evaluate inferences from facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Dismissal is appropriate, as here, when

15

no construction of the allegations will support the cause of action and any amendment is futile. *See Bpi Sports, LLC v. Labdoor, Inc.*, Case No. 15-62212-CIV-BLOOM, 2016 WL 739652 at *1 (S.D. Fla. Feb. 25, 2016) (citing *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171 (11th Cir. 1993)). In addition to the jurisdictional defects and basis for this Court to abstain from hearing this matter, WMA's claims face fatal defects. Four of the songs are not registered and therefore cannot form the basis for this lawsuit. WMA is not entitled to statutory damages or attorney's fees, and a claim for attorney's fees is not recognized as an independent cause of action. Finally, the Tortious Interference claim is preempted by copyright law.

### A. Four of the Subject Songs are not registered with the U.S. Copyright Office

The Copyright Act explicitly states that "no civil action for infringement of the copyright in any United States work shall be instituted *until* preregistration or registration of the copyright claim has been made[.]" 17 U.S.C. § 411(a) (emphasis added). The Supreme Court has made clear that registration of a copyright is a precondition to filing an infringement claim. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). Failure to plead registration warrants the dismissal of a complaint for copyright infringement. WMA has not shown or alleged the existence of a valid United States copyright registration related to four (4) of the Subject Songs it complains of. In the Complaint, WMA instead simply alleges that it owns the rights to "use the materials listed below" and points later to Exhibit 1 (Compl. ¶ 1). The registrations, however, do not cover four Subject Songs—"Pink Evening," "Melting Snow," "Cold Winter Evening," and "Stupid Snowflakes." As to these songs, the Complaint utterly fails to state a cause of action for copyright infringement. As a result, Counts I, II, and III must be dismissed or stricken as to these four Subject Songs.

16

**B. *WMA Cannot Assert Any Statutory Damages or Attorney's Fees Claims Under the Copyright Act***

The thrust of WMA's Complaint is that WMA recently acquired copyright interests in various Russian songs and is suing a French company for infringement for posting or authorizing the posting of those songs to YouTube—in most cases long before WMA ever existed. (*See* Compl. ¶¶ 1, 18–20, 23–26, Exh. 1). WMA's allegations on the face of the Complaint and attached Exhibit 1, however, obviate WMA's claims for statutory damages and attorney's fees, and the Court should dismiss WMA's Counts II and III. (Id. ¶¶ 59–65).

To that end, the Copyright Act authorizes an award of statutory damages in lieu of actual damages. *See* 17 U.S.C § 504(c). The Act also permits a court to award reasonable attorney's fees to the prevailing party as part of its award. *See* 17 U.S.C. § 505. Importantly, the Copyright Act explicitly limits when statutory damages and attorney's fees are available, stating that those forms of relief are not available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2); *see Cornerstone Home Builders, Inc. v. McAllister*, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004) (defining the term "commenced" as the first act of infringement in a series of ongoing separate infringements.").

Here, WMA is unable to assert that any of its registrations comply with the requirements under 17 U.S.C. § 412(2). In fact, WMA attached copyright registrations to the Complaint that unequivocally demonstrates it is not entitled to these remedies under the Copyright Act. (*See* Compl. Exh. 1, pp. 4–10). First, as stated above, four of the purported infringed works are not included in the attached registrations at all: "Pink Evening," "Melting Snow," "Cold Winter

17

Evening," and "Stupid Snowflakes." Because these works are not registered under U.S. copyright law, WMA cannot state a claim or seek statutory damages or attorney's fees. *See* 17 U.S.C. § 412(2).

As to the remaining tracks cited in the Complaint, these were all distributed years before WMA's registrations. The timeline is made clear, in part, by WMA's allegation that he purportedly sent demand letters to Believe and YouTube as early as 2021—two years before his 2023 registrations at Exhibit 1. Because WMA registered certain works after the date of purported infringement, he is ineligible for statutory damages and attorney's fees unless the registration is within three months of first publication. 17 U.S.C. § 412. WMA cannot meet that criteria either, because the works' publication occurred decades before registration. The earliest registration, Copyright Registration #PA 2-411-609, which covers solely the track "Autumn is Slowly Leaving," became effective on December 23, 2022—27 years following the song's first publication on May 22, 1995. (*See* Compl. at Exh. 1, p. 4). Similarly, Copyright Registration #PA 2-398-703 covering the tracks "Gray Night" and "White Roses," which were first published on March 10, 1989, was registered on February 1, 2023. The final registration attached to WMA's Complaint, Copyright Registration #PA 2-398-725, including the works, "I am Only Honest with the Moon" and "Summer" also became effective on February 1, 2023—over 33 years after their first publication on January 17, 1990. Therefore, the Complaint and attached exhibits make clear that WMA is not entitled to statutory damages or attorney's fees under the Copyright Act and Counts II and III should be dismissed. Likewise, WMA's final prayer for relief should be dismissed because it is not entitled to statutory damages or attorney's fees. (*See* Compl. at Wherefore Clause (c)–(d)).

18

Additionally, Count III is procedurally flawed because WMA is not permitted to seek attorney's fees as a separate count. Indeed, "A claim for attorney's fees is not a separate cause of action. It is a form of relief incident to prevailing on a particular claim." *R.W. v. Sch. Bd. of St. Lucie Cnty., Fla.*, No. 15-14300-CIV, 2016 WL 11701691, at *3 (S.D. Fla. May 23, 2016) (dismissing the count for attorney's fees as procedurally improper) (internal citations omitted). Because attorney's fees are not a recognized claim on its own, dismissal of Count III is proper.

### C. WMA's Claim for Tortious Interference of Beneficial Business Relationships Should be Dismissed because it is Preempted by the Copyright Act

WMA's final count for tortious interference of business relationships should be dismissed as a matter of law because it is preempted by federal law. The Copyright Act's preemption provision provides, in part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title . . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (alterations added). The Copyright Act's preemption is "generally broad." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001) (citation omitted). "Preemption by the Copyright Act occurs if the rights at issue: (1) fall within the subject matter of copyright set forth in sections 102 and 103, and (2) are equivalent to the exclusive rights of section 106. *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 515 F. Supp. 3d 1292, 1299 (S.D. Fla. 2021) (citing *Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983). As part of the second prong, the tortious interference claim must include an "extra element" to stand as its own cause of action. *Stripteaser, Inc. v. Strike Point Tackle, LLC*, No. 13-62742-CIV, 2014 WL 866396, at *5 (S.D. Fla. Mar. 5, 2014)(dismissing FDUTPA claim as preempted by copyright claim).

19

Accordingly, where the complaint fails to allege the "extra element" that "qualitatively change[s] the nature of the action," it cannot state a cause of action because it is preempted by the Copyright Act. *Id.* at * 5, *Korman v. Iglesias*, Case No. 18-21028-CV, 2018 WL 4410226, at *5 (S.D. Fla. June 28, 2018) *aff'd*, 778 Fed. Appx. 680 (11th Cir. 2019)(cleaned up).

The Southern District of Florida has found that tortious interference of business relationships is preempted by the Copyright Act. *Graham Ins. Grp., Inc. v. Statronics, Inc.*, No. 10-61904-CIV, 2011 WL 13217020, at *6 (S.D. Fla. Jan. 24, 2011) ("Indeed, courts examining tortious interference claims grounded on the unauthorized use of copyrighted material have consistently found those claims preempted by the Act.") (citing *Harper & Row, Publishers v. Nation Enters.*, 501 F. Supp. 848, 850 (S.D.N.Y. 1980), *rev'd on other grounds*, 471 U.S. 539 (1985). Here, WMA's tortious interference claim simply recites the legal elements and states that the copyright infringement forms the basis for the interference claim. (Compl. ¶¶ 73-74). (*Id.* at ¶¶ 74-76). Accordingly, Count V of WMA's Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, WMA's Complaint fails to state a cause of action upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and further fails to establish personal jurisdiction over Believe under Fed. R. Civ. P. 12(b)(2). Any amendment would be futile. Accordingly, Believe respectfully requests that this Court dismiss the Complaint with prejudice, award to Believe its fees incurred in defending the claims, and grant any further relief that this Court deems just and proper.

Respectfully Submitted,

SHULLMAN FUGATE PLLC

**<u>Allison S. Lovelady</u>**
Allison S. Lovelady (Florida Bar No. 70662)
alovelady@shullmanfugate.com
Amber A. Couzo (Florida Bar No. 1031514)
acouzo@shullmanfugate.com
2101 Vista Parkway Suite 4006
West Palm Beach, Florida 33411
(561) 614-2592

*Attorneys for Defendant Believe SAS*